UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DESHON HOLLOWAY,

                              Plaintiff,

  -against-                                 9:05-CV-0206
                                                           (LEK/DRH)
BETSY MITCHELL-ODDEY, ROY HASTINGS,
and FRANK BUSKA, Corrections Officers,

                              Defendants.

## MEMORANDUM-DECISION AND ORDER[1]

### I. Background

Plaintiff Deshon Halloway ("Plaintiff") has alleged that Corrections Officers Roy Hastings ("Hastings"), Frank Buska ("Buska"), and Betsy Mitchell-Oddey ("Mitchell-Oddey") (collectively, "Defendants") used excessive force against him on February 22, 2002, while he was an inmate at Upstate Correctional Facility. Complaint (Dkt. No. 1). The Upstate facility is a "secure lockdown" or "supermax" facility, meaning that the inmates are confined to their cells throughout the day, except for an hour of recreation. Tr. Transcript at 3, lines 9-19. Accordingly, corrections officers serve inmates their meals in their cells, passing the tray through a metal hatch in the cell door. Id. at 4, lines 4-9.

The Parties agree that on February 22, Plaintiff attempted to return his tray, after being served his noontime meal, and asked to speak to a sergeant. Complaint (Dkt. No. 1) at ¶ 8; Answer (Dkt. No. 17) at ¶ 5. Beyond that point, the Parties disagree. Plaintiff alleges that when he attempted to

---

[1] For printed publication by the Federal Reporters.

1

push his tray out of the hatch, Defendant Hastings grabbed his arm and held it, while Defendant Buska closed the hatch on his arm, trapping it. Complaint (Dkt. No. 1) at ¶¶ 9, 11; Tr. Transcript at 5, lines 12-20. At that point, Plaintiff alleges, Defendant Mitchell-Oddey arrived at the outside of his cell and began to kick aggressively at the hatch, injuring Plaintiff's trapped arm. Complaint (Dkt. No. 1) at ¶ 12. As a result, Plaintiff suffered a laceration in his arm, including the artery, which required ten (10) staples to close. Id. at ¶ 15; Answer (Dkt. No. 17) at ¶ 7. In contrast, Defendants argue that Plaintiff initiated the altercation by grabbing Hastings' arm and trying to pull it through the hatch into his cell. Defts' Trial Brief (Dkt. No. 55) at 1. Then, Defendants allege, Buska lifted the hatch and trapped Plaintiff's arm, protecting Hastings from Plaintiff. Id. at 2. According to this theory, Mitchell-Oddey heard the shouting, ran over, and kicked the hatch to force Plaintiff to release Hastings' arm. Id. at 2, 4.

## II. Discussion

A.    Standard

Plaintiff's claim of excessive force against him invokes the cruel and unusual punishment clause of the Eighth Amendment of the United States Constitution. The Supreme Court noted that "when prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6 (1992). See also Blyden v. Mancusi, 186 F.3d 252, 262-3 (2d Cir. 1999) (noting that the good-faith standard is appropriate because of the great pressure and competing interests involved in decisions to use force).

There is no dispute as to the injury, or as to the force applied; the issue is whether the force was used to restore order and protect an officer or to punish a difficult inmate. To succeed on his claim, Plaintiff must carry his burden of persuasion and prove by a preponderance of the evidence that the force used against him was malicious. See, e.g. Zellner v. Summerlin, 494 F.3d 344, 361 (2007).

B.     Analysis

Plaintiff told a compelling and sympathetic story in support of his actions on February 22, 2002. He told the Court that on numerous occasions not long before that date, his food had been tampered with and even spit in before it was delivered to him. Tr. Transcript at 4, lines 10-20. Plaintiff described his frustration and impotence over this situation; inmates at Upstate Correctional are not permitted to keep food in their cells and rely entirely on meals delivered by corrections officers. Id. at lines 16-18. Plaintiff told the Court that he had complained several times about this problem, but it had not been resolved. Id. at lines 14-16. On February 22, when Plaintiff received his meal, the food appeared to him to have been spit on. Id. at lines 18-21. Plaintiff explained that he wanted to return the tray immediately and speak to a sergeant, because if he did not, he would have no way of substantiating his complaint or showing that he did not tamper with the food himself. Id. at 5, lines 6-11; 16, lines 8-14.

Food has an even greater importance in prison than in the outside world; it serves as an important connection between the prisoner and his humanity, especially when, as here, the prisoner spends the entirety of his days in isolation. The Court notes that Plaintiff was on suicide watch, due in part to his strong feelings over this issue of food tampering. While Plaintiff said that he was not upset about what he perceived to be spit in his food, the Court finds that he had to be, and that this

3

strong emotional reaction led to the incident currently at issue.  It must be noted that Plaintiff's claim concerns the injury he suffered when his arm was caught in the cell door hatch, and not the indignity of spit in his food.  To succeed on his claim, Plaintiff must prove by a preponderance of the evidence that Defendants initiated the altercation by grabbing his arm, as he pushed the tray out of the hatch, and all three Defendants collaborated to injure him, seeking not to restore order, but to harass him and cause him harm.  In light of the evidence before the Court, Plaintiff did not meet this burden and, accordingly, his claim must fail.

Plaintiff emphasized, in supporting his claim, that he never grabbed Hastings' arm, even for an instant, but that he was grabbed and attacked as he tried to push his tray out the hatch.  Trial Tr. at 20, lines 16-23; 48, lines 7-13   In their testimony, all three Defendants, and the additional witness, Lieutenant Salls, were consistent; they all saw Plaintiff holding Hastings' arm.  The video of the event shows a struggle, but it does not clearly show who is holding whom.  What it does show is that the incident happened suddenly, without warning or time for reflection on either side.

The sequence of events: an arm being grabbed, followed by Buska holding the hatch shut and Mitchell-Oddey running from the next hallway to kick the hatch onto Plaintiff's arm, were so rapid that accepting Plaintiff's version of the facts would require finding that a conspiracy existed between Defendants.  Since a conspiracy could not rationally happen so fast, and there is no proof of premeditation, Plaintiff has simply not shown that such a conspiracy existed..

Also, Plaintiff's description of the events is undermined by a letter described at trial, which was written to Defendants from Prisoner Legal Services.  Tr. Transcript at 48, lines 14-25.  The letter admits that Plaintiff may have grabbed Hastings' arm in the struggle.

On the audio component of the video recording, both Plaintiff and Defendants are audible;

4

throughout the incident, Plaintiff yelled "I want to see a sergeant" and Hastings yelled "pull it in." The parties all agreed that this is what was said. Plaintiff argues that these words necessarily support his story. He argues that had he, Plaintiff, been holding Hastings' arm, Hastings would have yelled "let go" or "you've got my arm," but he never did. However, Defendants refuted this assumption, by showing that "pull it in" is a very common directive in the prison facility, issued perhaps dozens of times a day by a corrections officer. The frequency with which this order is issued explains why Hastings would, almost as a knee jerk reaction, say "pull it in" rather than "let go," even if his arm was being held.

Plaintiff has shown the Court that he has had difficulty throughout his eleven years in the Department of Corrections. He has filed frequent grievances and exercised his right to complain. However, the Court does not consider that history to be relevant to the specific issue before the Court. If there is an inference to be made that, because of the grievances Plaintiff had filed, the Defendants were displeased and sought to harass him or punish him, there is not sufficient proof of that fact. While the Court is sympathetic to Plaintiff's injury and the other problems he has reported, he has not met his burden in this case. Because Plaintiff has not proved by a preponderance of the evidence that the force used against him was not a "good faith effort to maintain or restore discipline," Hudson, 503 U.S. at 7, judgment will be entered in favor of Defendants.

### III.  Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED**, that judgment be entered in favor of Defendants; and it is further

**ORDERED**, that the Clerk of Court **CLOSE** Case No. 9:05-CV-0206; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:    October 04, 2007
          Albany, New York

Lawrence E. Kahn
U.S. District Judge